## FINK et v MIAMISBURG HYDRAULIC CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1275.  Decided June 24, 1935

Kelly & Knee, Dayton, and Merritt Schlafman, Dayton, for plaintiffs.

James & Coolidge, Dayton, and Phillip Becker, Dayton, for defendant.

**OPINION**

By HORNBECK, J.

Upon the issues joined and the evidence, we are constrained to say that the plaintiffs have not sustained their case by that degree of proof which is enjoined upon them. We are not certain that they have not suffered some damage by reason of the erection of the dyke, but possibly because of the nature of the case and difficulty in securing proof the record does not support their contention to a degree which would enable us to find for them.

It seems fairly well established that the levee along plaintiffs' farm was broken through in several places during the flood of 1913. The extent to which high water came upon and flowed over the Fink land from 1913 to 1926 is not specifically shown. It is only testified to in general terms. It is but a natural law that water if it comes on with any velocity whatever will wash out land upon which it flows and that each succeeding time it will cut in deeper. We cannot say in view of all the facts that the damage which has been done to the Fink land has not come about by reason of the breaks in their levees. The testimony of the plaintiffs touching the contour of the shore line and the land adjacent to the dam on the east side thereof prior to 1926 is but general. We are satisfied that there were times prior to 1926 when the water flowed with much force over and upon the land of the Hydraulic and Elter beyond the east side of the dam. This had the effect of temporarily widening the channel during high water and accommodated a great bulk of the flow. The result thereof was to lessen somewhat the velocity of the current to the northwest and to reduce the amount of water which went onto the Fink land.

If the defendant company had changed the shore line or if it had narrowed the channel of the river and thereby caused damage to the plaintiffs, clearly it would be liable It is upon this narrow question that this case, in the main, rests.

The more definite testimony, which seems to be uncontradicted except generally, is to the effect that the channel of the river has not been narrowed, nor has the contour of the shore line been changed, except that the dyke at and near the bank of the river has been raised. The testimony of former officers of the defendant company, one of the men who had charge of the construction of the dyke, one of the laborers who worked on it, Mr. Elter, who owned the land adjacent thereto, all is to the effect that the dyke as now constructed was but a continuation of construction which was theretofore upon the land of the Hydraulic in the same place and substantially in the same condition.

If however, we could say that the dyke was built into the channel upon the further question of its effect upon the current of the river we are uncertain. J. A. Craven, the engineer for the plaintiff, who is very fair in his testimony, is of the opinion that the dyke, if it extended into the channel of the river and upstream, would cause a marked deflecton in the flow to the northwest and toward Mr. Fink. Whether or not it would produce the result of which the Finks complained he will not say. All the experts agree that the only definite method of proving the actual velocity and direction of the current in the river is by instruments. This type of experiment was not undertaken, prevented, probably, because of the cost.

If we were permitted to consider as testimony that which we observed on our recent visit to the dam, the river and the Fink property, we would have some convincing proof of the fact that the trend of the current at the dam is to the west. We saw a very large tree caught at the extreme western end of the dam. The only reasonable hypothesis would be that this tree had flowed down the channel and it would require a strong current to have carried it over to the west end of the dam. But if this log came from the eastern side of the river we do not know whether it was deflected in its course by reason of the dyke.

It appears that from the dyke to the nearest point in the levee on the Fink land through which the water enters is 1800 feet, and the distance to the second place through which it enters is 2200 feet. It is also admitted by practically every witness who testifies on the subject that water has come through these openings in the levee on the Fink land since the flood of 1913. Before we would be safe in drawing such conclusion we should have some definite proof

touching the probability that a dyke forty feet wide and ten feet above the dam could affect the flow and deflect the course of a great body of water after it passes over the dam at a distance of 1800 and 2200 feet, respectively.

Upon the whole record, which has been augmented considerably in this court, we are brought to the same conclusion as reached by Judge Snediker, and largely for the same reasons he advanced. The facts present a case where proof is not made. It is unfortunate and we regret that the proof is not more convincing one way or the other, so that we might release an opinion based upon evidence which clearly preponderated in behalf of one of the other of the parties.

The prayer of the petition will be denied, finding for defendant for costs.

BARNES, PJ, and BODEY, J, concur.